# UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF TENNESSEE
# NASHVILLE DIVISION

| | |
|---|---|
| CAPITAL CONFIRMATION, INC, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Case No. 3:09-0412 |
| ) | Judge Trauger |
| v. ) | |
| AUDITCONFIRMATIONS, LLC, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM

Pending before the court is a Motion to Reconsider filed by the plaintiff Capital Confirmation, Inc. ("Capital") (Docket No. 30). For the reasons discussed herein, this motion will be denied.

## RELEVANT FACTUAL AND PROCEDURAL BACKGROUND

The court fully discussed the factual background of this dispute, which is between competitors in the field of processing electronic audit confirmations, in the Memorandum that ruled on the defendant AuditConfirmations, LLC's (Audit's) Motion to Dismiss for lack of personal jurisdiction (Docket No. 27), and, therefore, a complete review of those facts is not necessary here. That said, some brief background is appropriate to give context to the present motion.

On May 8, 2009, Capital sued Audit alleging that various misrepresentations on Audit's website amounted to "unfair competition" in violation of state and federal law. (Docket No. 1 at 7-9.) On July 6, 2009, Audit, a Colorado corporation, moved to dismiss the Complaint for lack

1

of personal jurisdiction, arguing, among other things, that it had not "purposefully availed" itself of doing business in Tennessee, and, therefore, this court did not have personal jurisdiction over Audit. (Docket No. 16.) In response, Capital contended that Audit's entire business was comprised of a "fully interactive," commercial website that was accessible from anywhere in the country. That fact, Capital argued, along with evidence of other sporadic contact with Tennessee, was sufficient to show the required "purposeful availment." (*See generally* Docket No. 21.)

Importantly, during this briefing stage, both parties were satisfied to have the court resolve the personal jurisdiction issue based on the affidavits and the related evidence that the parties filed with the court. That is, neither party requested jurisdictional discovery into Audit's contacts with Tennessee or a hearing on the matter.[1] As discussed in the Memorandum, while the plaintiff has the burden of establishing jurisdiction, under settled law, because the parties proceeded without the benefit of jurisdictional discovery or an evidentiary hearing, Capital only needed to establish a *prima facie* case of personal jurisdiction to defeat Audit's motion. (Docket No. 27 at 7 citing *Theunissen v. Matthews*, 935 F.2d 1454, 1458 (6th Cir. 1991)). Capital attempted to make the required showing using affidavits and other evidence it had obtained through independent research into Audit's contacts with Tennessee. (*See generally* Docket No. 21.)

On August 28, 2009, the court issued its Memorandum and Order, granting Audit's

---

[1] Indeed, Capital, in its Response to Audit's Motion to Dismiss, speculated that such jurisdictional discovery would show contacts with Tennessee sufficient to establish broad, general personal jurisdiction over Audit, but Capital did not request such discovery, explicitly stating that Capital "seeks only to establish specific personal jurisdiction over Audit," based on the briefing and the affidavits before the court. (Docket No. 21 at 6-7.)

Motion to Dismiss based on a lack of personal jurisdiction. (Docket Nos. 27-28.) The court started from the premise that, under settled Sixth Circuit law, operation of a website by a non-resident defendant can be sufficient to establish the required "purposeful availment" by that defendant, if the website "is interactive to a degree that reveals *specifically intended interaction* with residents of the [forum] state." (Docket No. 27 at 11 quoting *Neogen Corp. v. Neo Gen Screening, Inc.*, 282 F.3d 883, 890 (6th Cir. 2002))(emphasis added).

The court concluded that, while reasonable minds could differ on the meaning of "specifically intended interaction," the most logical interpretation and the interpretation most consistent with the relevant precedent was that a showing of "specifically intended interaction" required more than a showing of a "generally accessible, interactive commercial website reachable from the forum." (Docket No. 27 at 16.) That is, to establish the necessary interaction, "the plaintiff must sufficiently show that the defendant has taken some sort of deliberate step in order to establish a substantial, meaningful connection with the forum." (*Id.*)(internal quotation omitted).

As the court viewed the evidence presented by the parties, the plaintiff had failed to show any such "deliberate step." As discussed in the Memorandum, in attempting to show this "deliberate step," the plaintiff largely relied on the fact that Tennessee residents (such as counsel for the plaintiff) could access the Audit website, that a single CPA in Memphis had attempted (but, for reasons that are unclear, failed) to legitimately subscribe to Audit's services, and that Audit was taking various steps to market itself outside of the Rocky Mountain region. That is, while the plaintiff had shown that (1) customers could (and, in one case, did) legitimately seek out Audit's services from Tennessee, and (2) that Audit marketed itself to national companies

3

and participated in national programs such as "Google Adwords," the evidence failed to show that Audit had taken any affirmative steps to direct its conduct toward Tennessee, specifically. (Docket No. 27 at 17- 18)("There is no indication that Audit has had anything resembling a business relationship with anyone in Tennessee. . . . Capital has only shown that Audit had a few attenuated and random contacts with the state of Tennessee. Capital has not shown any legitimate effort on Audit's part to direct its conduct toward the state of Tennessee, and, therefore, Capital has not established the purposeful availment required to make out a *prima facie* case of personal jurisdiction.")

As the plaintiff had failed to establish at least one of the necessary elements of the *prima facie* case, the court granted Audit's Motion to Dismiss and entered a final judgment dismissing this case. (Docket No. 29.) Capital filed a timely Motion to Reconsider under Federal Rule of Civil Procedure 59(e), which is typically referred to as a Motion to Alter or Amend the Judgment.

## ANALYSIS

I.  **Motion to Alter or Amend**

    A.  **Standard of Review**

Federal Rule of Civil Procedure 59(e) states that "[a] motion to alter or amend a judgment must be filed no later than 10 days after the entry of the judgment." Fed. R. Civ. P. 59(e). The district court may grant a motion to alter or amend (or reconsider) a judgment under Fed. R. Civ.P. 59(e) for any of four reasons: (1) because of an intervening change in controlling law; (2) newly discovered evidence; (3) to correct a clear error of law; or (4) to prevent manifest injustice. *Abnet v. Unifab Corp.*, 2009 WL 232998, *3 (6th Cir. Feb. 3, 2009). In discussing the

4

movant's substantial burden under Rule 59(e), the Sixth Circuit has held that a "motion under Rule 59(e) must either clearly establish a manifest error of law or must present newly discovered evidence." *Roger Miller Music, Inc. v. Song/ATV Publishing, LLC*, 477 F.3d 383, 395 (6th Cir. 2007) (internal quotation omitted).

The Rule 59(e) vehicle does not exist to provide the movant with a second opportunity to make its previous argument, that is, a Rule 59(e) motion "is not an opportunity to re-argue a case." *Sault Ste. Marie Tribe of Chippewa Indians v. Engler*, 146 F.3d 367, 374 (6th Cir. 1998). Moreover, the movant should not use a Rule 59(e) motion to raise or make arguments "which could, and should, have been made before judgment issued." *Id.* (internal quotations omitted); *see also Roger Miller Music, Inc.*, 477 F.3d at 395 ("under Rule 59(e), parties cannot use a motion for reconsideration to raise new legal arguments that could have been raised before a judgment was issued.")

In light of the "narrow purposes" of the motion and judicial system's interests in the finality of judgments and in the conservation of judicial resources, Rule 59(e) motions "typically are denied." *Miller v. Bell*, 2009 WL 2905562, *2 (E.D. Tenn. Sept. 10, 2009)(internal quotation omitted). Here, the plaintiff seeks reconsideration, claiming that the court made an error of law and that there is "newly discovered evidence." (Docket No. 30 at 2.)

**B.     "Error of Law"**

**1.     Interpretation of "specifically intended interaction"**

The plaintiff's motion is, for the most part, an unabashed attempt to re-argue the exact same points that were raised in the parties' initial briefing on the defendant's Motion to Dismiss. Just as it did in initial briefing, the plaintiff argues that Audit's entire business is comprised of a

5

fully interactive website that can be accessed and interacted with from anywhere in the country, and that the website invites "widespread interaction with banks, CPA's and audit clients all over the country."[2] (*Id.* at 3-4.) This business model, Capital contends, dictates that Audit is subject to personal jurisdiction anywhere in the country, including Tennessee. (*Id.*)

The plaintiff then sets out to distinguish the myriad of cases cited by the court in support of its interpretation of "specifically intended interaction." That is, in the Memorandum, the court examined a series of cases to glean, in the website context, what conduct rises to the level of "specifically intended interaction." (Docket No. 27 at 11-17.) Again, the court determined that "all of these cases stand for the proposition that purposeful availment requires 'something more' than the operation of a generally accessible, interactive commercial website reachable from the forum. That is, the plaintiff must sufficiently show that the defendant has taken some sort of deliberate step in order to establish a substantial, meaningful connection with the forum." (*Id.* at 16.)

Rather than using these cases to challenge the court's interpretation of the phrase "specifically intended interaction," the plaintiff simply attempts to distinguish these cases on the facts, arguing that the websites at issue in those cases were "less interactive" than the Audit website or that the district court in a given case simply reached the wrong result in concluding that there was no personal jurisdiction. (Docket No. 30 at 5.) The plaintiff also argues that the two cases from the Middle District of Tennessee cited in the Memorandum support its position because, in those cases, the finding of "purposeful availment" rested, in part, on evidence that a

---

[2]The plaintiff repeatedly suggests that the fact that Audit's entire business is on-line makes it more amenable to personal jurisdiction here, but Capital provides no case law to support this view. (Docket No. 30 at 3-4.)

single customer from the forum state had established a relationship with the defendant. *Sony/ATV Music Publishing LLC v. CAVS USA, Inc.*, 2009 WL 2177110, *5 (M.D. Tenn. July 21, 2009)(Echols, J); *Word Music, LLC v. Priddis Music*, *Inc.*, 2007 WL 3231835, *7 (M.D. Tenn. Oct. 30, 2007)(Wiseman, J). Again, the court discussed these cases in the Memorandum, and concluded that they did not help Capital's position, because, here, unlike in these other cases, there was no evidence that Audit had anything resembling a business relationship with anyone from Tennessee; that is, "there is no indication that anyone from Tennessee actually has legitimately sought out Audit's services and actually signed up for an account with Audit that he or she intended to use." (Docket No. 27 at 14-15, 17.)

To the court, the plaintiff's argument here is simply a re-argument of the same case it presented in initial briefing, and it is, therefore, improper under Rule 59(e). Moreover, as discussed in the initial Memorandum, in the website context, the Sixth Circuit has not clearly defined "specifically intended interaction with residents of the [forum] state," but that Court has strongly implied that some direct, purposeful contact with the forum state is required. *See Bird v. Parsons*, 289 F.3d 865, 874-75 (6th Cir. 2002)(finding purposeful availment where the defendant's commercial website was available to the residents of the forum state (Ohio) *and* the plaintiff contended that the defendant had, through the website, accepted the business of more than 4,000 Ohio residents).[3]

---

[3]In an entirely new argument advanced in the plaintiff's Reply in Support of its Motion to Reconsider, the plaintiff suggests that the court should presume that .58 percent of Audit's customers come from Tennessee, because the Sixth Circuit, in *Bird*, accepted the plaintiff's 4,000+ Ohio resident calculation, which was based on the plaintiff's allegation that the defendant's contacts were evenly distributed across the United States. (Docket No. 37 at 2 citing *Bird*, 289 F.3d at 872). It is not necessary to explore the creative way that the plaintiff arrived at the .58 percent number or the clear distinctions that exist between Audit and the defendant in

Also, as discussed in the Memorandum, this strong implication is supported by a string of cases that hold, for instance, that "there must be evidence that the defendant . . . directly target[ed] its web site to the state, knowingly interacting with residents of the forum state via its website, or through sufficient other related contacts." *Toys R Us, Inc. v. Step Two, SA*, 318 F.3d 446, 454 (3rd Cir. 2003); *see also Roberts v. Paulin*, 2007 WL 3203969, *5-6 (E.D. Mich. Oct. 31, 2007) (to find purposeful availment in the commercial website context, "courts generally require something more in the way of a specific, meaningful connection with the forum state in particular, as opposed to a connection with the nation as a whole.") Therefore, the court finds no reason to reconsider its conclusion as to the meaning of "specifically intended interaction."

### 2. Application of "specifically intended interaction"

Next, the plaintiff argues that, even under the court's interpretation of the term, it showed "specifically intended interaction" with Tennessee. Again, the plaintiff re-plows the same ground as in the previous briefing; that is, the plaintiff points to (1) Audit's general participation in the Google Adwords program, (2) Audit's marketing to national companies and its doing business outside of the Rocky Mountain region, and, (3) to the Memphis CPA's (ultimately failed) attempt to sign up for Audit's service, as all indicating "purposeful availment" or a "specifically intended interaction." (Docket No. 30 at 7-8.)

The court considered this evidence the first time around. As discussed in detail in the initial Memorandum, none of the evidence shows that Audit sought out or intended any interaction with Tennessee; instead, the evidence simply shows that the defendant did not

---

*Bird.* Obviously, the reply in support of a Motion to Reconsider is well past the time for the plaintiff to be advancing entirely new arguments here.

deliberately "opt out" of doing business in Tennessee and that, along the way, there was a single legitimate, but unsuccessful, attempt to contact Audit from Tennessee. As the court stated in the Memorandum, "the passive failure to take pre-emptive measures to avoid contact with a forum simply does not amount to the type of thoughtful, affirmative conduct necessary to show purposeful availment." (Docket No. 27 at 18)(citing *Bridgeport Music, Inc. v. Still N The Water Publishing*, 327 F.3d 472, 478 (6th Cir. 2003))("purposeful availment is . . . something more than a passive availment of the forum state's opportunities.")(internal citation and quotation omitted). As the plaintiff has simply re-argued its previously advanced (and considered) argument, the court finds no reason to reconsider its conclusion as to the application of "specifically intended interaction." Therefore, the court concludes that there is no basis for granting the plaintiff's motion based on a "manifest error of law."

        C.      **New Evidence**

The plaintiff also argues that "new evidence" has recently become available, and, therefore, the court should reconsider its previous decision in light of that new evidence. The plaintiff states that "sometime after Capital filed its response brief, [Capital Chief Marketing Officer Brian] Fox received the August 2009 issue of the periodical *The CPA Technology Advisor* that on page 13 has a short article about Audit under the feature heading 'Engagement & Trial Balance.'" (Docket No. 30 at 8.) In his affidavit submitted along with Capital's Motion to Reconsider, Fox stated that such articles are only published with the "cooperation" of the company featured. (Docket No. 30 Ex. 1 at 1.) Fox also contends that he spoke to an individual at the periodical and learned that there are 711 subscribers to this magazine in Tennessee. (*Id.* at 2.) Capital claims that this new evidence demonstrates that Audit "specifically intended

9

interaction" with Tennessee.[4] (Docket No. 30 at 8.)

This argument is without merit. Even accepting Fox's declaration (which is replete with arguable hearsay and speculation) as true, the fact that Audit simply allowed itself to be featured in a publication that may have been received by several hundred Tennessee residents (along with presumably thousands of other people in other states) hardly seems like the type of deliberate conduct necessary to show purposeful availment. As Audit points out, "there is no evidence that Audit paid for an advertisement or that Audit was aware that the publication would be distributed in Tennessee." (Docket No. 32 at 6.) Rather, this is simply another example of Capital's attempting to establish personal jurisdiction over Audit based on Audit's alleged failure to "opt out" of incidental contact with Tennessee. The court rejected this attempt in the initial briefing and sees no basis to reconsider that conclusion here.[5]

---

[4]Capital goes on to argue that, in light of the fact that this brand of advertising was not revealed earlier, "[o]ne must wonder what other types of advertising and contacts" have not been made known by Audit and, "as a result, Capital respectfully requests the court grant it leave to conduct limited jurisdictional discovery. In this way, Capital can determine the true nature and extent of Audit's contacts with the State of Tennessee. Such discovery would include inquiry into the locations of the banks and accountants of its audit contacts, contacts with its CPA clients, updated through the present, and marketing efforts." (Docket No. 30 at 8.) This is clear overreaching. Given that they are competitors in the same, narrow field, Capital undoubtedly clearly understood the nature of Audit's business (and its potential contacts) before Audit filed its Motion to Dismiss. Capital made the decision, through briefing that motion, not to seek jurisdictional discovery but to try and meet the lighter burden of establishing a *prima facie* case of jurisdiction. Capital came up short in that effort. Capital is not entitled, only after hearing that it lost, to drag Audit through jurisdictional discovery that it could have requested in the first place.

[5] Independent of any briefing in this case, the court became aware of the *Jackson v. L&F Martin Landscape*, 2009 WL 1935931 (6th Cir. July 6, 2009) case. In *Jackson*, the defendant moved to dismiss for lack of personal jurisdiction. *Id.* at *1. In response to the motion to dismiss, the plaintiff sought, if the court found jurisdiction to be lacking, for the case to be transferred under 28 U.S.C. § 1631. *Id.* Section 1631 dictates that, where there is a "want of jurisdiction" in a case, the district court, if it be in the "interest of justice," should transfer the

## CONCLUSION

For the reasons discussed above, Capital's Motion to Reconsider will be denied. This case has been, and will remain, dismissed, without prejudice.

An appropriate order will enter.

_____
ALETA A. TRAUGER
United States District Judge

---

case to an appropriate jurisdiction. 28 U.S.C. § 1631. Unlike in *Jackson*, neither party here has requested transfer under Section 1631. Nevertheless, there is language in *Jackson* that suggests that the district court should at least recognize the potential for transfer before dismissing a case for lack of personal jurisdiction. For instance, the court writes, "[b]y failing to address the propriety of a transfer pursuant to section 1631 and dismissing the case without first determining whether a transfer would be 'in the interest of justice,' the district court abused its discretion." 2009 WL 1935931, at *2. Again, this language is in the context of a case in which one party had requested a Section 1631 transfer. However, out of an abundance of caution, the court recognizes Section 1631, and finds that, because neither party has requested transfer under that statute, and because the plaintiff has not indicated any desire to maintain this action in a forum (such as Colorado) other than the Middle District of Tennessee, it is not in the interest of justice to transfer this case. It is important to clarify, however, that, consistent with Sixth Circuit precedent on motions to dismiss for lack of personal jurisdiction, the previous dismissal of this action was "without prejudice," which permits the plaintiff to re-file this action in an appropriate forum. *See Harris v. Lloyds TSB Bank, LLC*, 281 Fed. Appx. 489, 496 (6th Cir. 2008).